## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

*Plaintiff*,

v.                                                                Case No. 25-CR-10001-EFM

TARON LANGHOVER,

*Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Taron Langhover's Motion to Suppress (Doc. 22). Defendant asks the Court to suppress the fruits of several searches executed in this case as violative of the Fourth Amendment and Rule 41 of the Federal Rules of Criminal Procedure. The Government opposes Defendant's Motion, arguing that no such violations occurred and, alternatively, that various exceptions apply. The Court held a hearing on Defendant's Motion and has considered the testimony, exhibits and arguments presented. For the reasons stated below, the Court denies Defendant's Motion.

### I.        Factual and Procedural Background[1]

The events underlying this case quickly transpired over a three-day period. On December 17, 2024, Sedgwick County Dispatch received a call from Mrs. Langhover, the Defendant's wife, reporting that she found explicit images of minors on Defendant's basement computer. Mrs. Langhover recognized one of the minors as her minor daughter's friends, a next-door neighbor,

---

[1] The facts are taken from the witness testimony and exhibits presented at the hearing on Defendant's Motion.

and that the images of this minor were taken from a bathroom in their home. Deputy Jayden Sears, of the Sedgwick County Sheriff's Office ("SCSO"), followed up with Mrs. Langhover on the report, and subsequently contacted Detective Steven Meyer with Internet Crimes Against Children Task Force ("ICAC") about it.[2]

While Detective Meyer spoke with Mrs. Langhover about her report, Detective LaShelle O'Neal—who quickly became the lead investigator in this case—drafted an application and affidavit[3] for a search warrant of the Defendant's residence ("Residential Search Warrant"). The affidavit recounts Mrs. Langhover's report, describes her conversation with Detective Meyer, and contains several paragraphs reciting Detective O'Neal's training and experience in child exploitation cases. Detective O'Neal sent the draft to the Sedwick County District Attorney ("D.A.") for review. The D.A. instructed Detective O'Neal to sever the warrant and affidavit and scan them as two separate documents before emailing them as separate attachments to Sedgwick County Judge Shawn Elliot. Judge Elliot issued the Residential Search Warrant at 12:29 P.M. on December 17, 2024.

The Residential Search Warrant authorized officers to perform the following actions and seize the following items:

1. Forensically process and analyze in a controlled setting all listed electronic media, for the purpose of viewing and or retrieving for evidentiary purposes all

---

[2] The Kansas ICAC office is a unique task force staffed by federal, state, and local law enforcement agencies. Homeland Security Agents, SCSO Detectives, and Wichita Police Department ("WPD") Officers work together to investigate various child exploitation cases across the state. SCSO detectives assigned to ICAC often obtain Homeland Security Investigations ("HSI") Task Force Officer ("TFO") credentials to assist with ICAC's federal investigations. For example, SCSO Detective Meyer and SCSO Detective LaShelle O'Neal have TFO credentials.

[3] Detective O'Neal's application and affidavit are contained together in a single document. The same is true for the two other search warrant applications and affidavits that Detective O'Neal drafted in this case. The Court refers to each respective document collectively as "affidavit" throughout this Order.

data including electronic images, documents and stored electronic communications.

2. Digital communications devices allowing access to the Internet or to cellular digital networks.

3. Images or visual depictions representing the violation of Kansas Statutes Annotated.

4. Conduct a preview search of all located digital communications devices and digital storage media to exclude from seizure those, which have not been involved in the violation of Kansas Statutes Annotated, by use of manual or automated preview tools.

5. If computers or other digital devices are found in a running state, the investigator may acquire evidence from the devices prior to shutting the devices off. This acquisition may take several hours depending on the volume of data. This will include the contents of volatile memory related to computers and other digital communication devices that would tend to show the current and recent use of the computer, use of encryption, use of other communications devices, routes of Internet and other digital communications traffic and passwords, encryption keys or other dynamic details necessary to preserve the true state of running evidence.

6. Manuals and other documents (whether digital or written) which describe operation of items or software seized.

7. Items containing or displaying passwords, access codes, usernames, or other identifiers necessary to examine or operate items, software or information seized.

8. Items or digital information that would tend to establish ownership or use of computers and Internet access equipment and ownership or use of any Internet service accounts and cellular digital networks to participate in the violation of Kansas State Statute Annotated.

9. Items that tend to show dominion and control of the property searched, to include utility bills, telephone bills, correspondence, rental agreements, and other identification documents.

10. Pictures of the exterior and interior of the residence.

After listing the items to be seized, the Residential Search Warrant states "[t]he items listed in the Application for Search Warrant and the affidavit of probable cause are incorporated herein by reference and are located in or upon the above-described persons, places, things or means of

conveyance." The Residential Search Warrant does not identify the crime being investigated; it only mentions "violations of Kansas Statutes Annotated."[4]

Detective O'Neal and other officers executed the Residential Search Warrant the same day it was issued. HSI Agent Travis Putrah (also with ICAC) was present too. Detective O'Neal explained the situation to Defendant, who was home at the time, and officers seized Defendant's Samsung Galaxy Fold cellphone from his person. Detective O'Neal then identified herself as with the Sherrif's Office before entering the home. While inside, officers seized an HP Pavilion Gaming Desktop computer from the basement, amongst several other devices and electronic storage devices. Other officers, including Agent Putrah, searched the detached white garage on the property which housed hundreds of terrariums for dart frogs. While officers took photos in both the residence and detached garage, the only items they seized were electronic devices from the residence and Defendant's person.

On December 18, 2024, Detective O'Neal drafted two affidavits to obtain search warrants for the computer and cellphone based on the information gathered while executing the Residential Search Warrant. Like the Residential Search Warrant, she first sent the drafts to the D.A. for approval and then on to Judge Elliot, who issued a search warrant for the computer on December 18, 2024, and for the cellphone on December 19, 2024, (collectively "Device Search Warrants"). Also like the Residential Search Warrant, the Device Search Warrants use broad language to describe the items to be seized and describe the crime being investigated as "violations of Kansas Statutes Annotated." The Device Search Warrants further contain the same incorporation language

---

[4] Kansas Statutes Annotated consists of the entirety of Kansas law—which does include criminal statutes—but also rules on agriculture, probate, schools, etc. *See generally* K.S.A. 1-101 *et seq.*

as the Residential Search Warrant. Officers recovered additional images from both devices when executing the Device Search Warrants.

While Detective O'Neal primarily led the investigation and assumed a state prosecution would result, HSI Agent Putrah remained involved. Agent Putrah formally opened the case for federal adoption on December 19, 2024, and later obtained a Federal Search Warrant for the devices seized throughout the case on January 3, 2025. When Agent Putrah opened the case federally, he learned that another jurisdiction was also investigating the Defendant for illegal dealings of poisonous dart frogs under the Lacey Act.[5] Agent Putrah recalled the frog terrariums he saw when executing the Residential Search Warrant, went to the residence on December 19, 2024, and received Mrs. Langhover's verbal and written permission to take photos of the frogs in the detached garage to be identified by a Sedgwick County Zoologist. Agent Putrah found a Samsung Galaxy phone in the detached garage and obtained Mrs. Langhover's permission to search it. There were no child exploitation images found on the phone.

Based on the images recovered, Defendant was initially charged federally by complaint based on an affidavit sworn out by Detective O'Neal. A Grand Jury later returned an indictment charging the Defendant with one count of possession of child pornography and two counts of production of child pornography. Defendant filed the present Motion to Suppress on May 27, 2025. The Court held a hearing on Defendant's Motion on September 5 and September 10, 2025, and has since considered the testimony, exhibits, and arguments presented at the hearing.

---

[5] This case is limited to the charges Defendant faces under 18 U.S.C. § 2251(a) and § 2252A(a)(5)(B).

## II.    Legal Standards

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[6] Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."[7] If a search or seizure violates the Fourth Amendment, the "fruit of the poisonous tree" doctrine prohibits admitting evidence directly obtained as a result of the unconstitutional act, including information, objects, or statements.[8] Searches must be authorized by a valid warrant unless an exception to the warrant requirement applies.[9]

## III.    Analysis

In his Motion, Defendant argues that the fruits of the Residential Search Warrant and the Device Search Warrants should be suppressed for violating the Fourth Amendment's particularity requirement and Rule 41 of the Federal Rules of Criminal Procedure. The Government responds by arguing no such violations occurred, and if they did, good faith, inevitable discovery, and private search exceptions apply. The parties also dispute whether Mrs. Langhover had authority to consent to the December 19, 2024, search of the detached garage and the phone found therein.

### A.    Fourth Amendment Particularity

Under the Fourth Amendment, "no Warrants shall issue" without "particularly describing the place to be searched, and the persons or things to be seized."[10] "A description is sufficiently

---

[6] U.S. CONST. amend. IV.

[7] *United States v. Calandra*, 414 U.S. 338, 347 (1974).

[8] *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963).

[9] *California v. Carney*, 471 U.S. 386, 390 (1985).

[10] U.S. CONST. amend. IV.

particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized."[11] A warrant that uses broad or generic terms can be valid, but only when "its text constrains the search to evidence of a specific crime such that it sufficiently narrows language that, on its face, sweeps too broadly."[12] "Warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized."[13]

Here, the Residential Search Warrant itself blatantly fails the particularity requirement. Not only does it describe the items to be seized in generic terms, but it also only identifies the crime being investigated as violation of the entirety of Kansas Statutes Annotated. Put simply, its text does not even hint at the crime being investigated. The Device Search Warrants fair no better, asides from specifically describing the individual devices to be searched.

The Government concedes that the Residential Search Warrant by itself is facially deficient. Instead, the Government argues that the deficiency is cured by Detective O'Neal's supporting affidavits to each warrant. While the affidavits contain the same list of items to be seized as their respective warrants, they further describe Detective O'Neal's experience investigating child exploitation cases and Mrs. Langhover's detailed report such that the crime being investigated, child pornography, is apparent and sufficiently particular.[14]

---

[11] *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (quoting *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir. 1982)).

[12] *United States v. Suggs*, 998 F.3d 1125, 1134 (10th Cir. 2021) (citations omitted).

[13] *Leary*, 846 F.2d at 600 (quoting *United States v. Fuccillo*, 808 F.2d 173, 176 (1st Cir. 1987)).

[14] *See id.* ("Even a warrant that describes the items to be seized in broad and generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." (citations omitted)); *United States v. Palms*, 21 F.4th 689, 698–99 (10th Cir. 2021) ("To be sufficiently particular, search warrants do not have to identify specific statutes for the crimes to which they are limited." (citations omitted)). *Cf. Cassady v. Goering*, 567 F.3d 628, 635–36 (10th Cir. 2009) (concluding an incorporated affidavit did not cure the warrant, in part, because it contained "virtually identical language describing the items to be seized," but also made "no mention of the affiant's training or expertise" or otherwise indicate that the search was limited to evidence of the

But the mere existence of a particular affidavit cannot cure an unparticular warrant. An affidavit may only cure a deficient warrant when they "can be reasonably said to constitute one document."[15] This occurs when two requirements are met: "(1) the warrant and the affidavit must be attached; and (2) the warrant must expressly incorporate the affidavit."[16] Here, the parties dispute both requirements; the Court addresses each in turn.

*1.    Attachment*

The attachment requirement is met when an affidavit and warrant are "physically connected so that they constitute one document."[17] Here, the Government argues that the affidavit was attached to the Residential Search Warrant when Judge Elliot issued it via email. Defendant argues that the affidavit was not attached when issued but also argues that the Court should evaluate whether the attachment requirement was met when the warrant was executed as opposed to when it was issued. The Government concedes that the affidavit was not attached to the Residential Seach Warrant when it was executed but asserts that issuance is the critical stage. Thus, the first determination the Court must make is when attachment should be evaluated: the Residential Search Warrant's issuance or execution.

---

crime being investigated).

[15] *Leary*, 846 F.2d at 603.

[16] *Suggs*, 998 F.3d at 1135 (citing *Leary*, 846 F.2d at 603).

[17] *Leary*, 846 F.2d at 603.

Relevant Tenth Circuit and Supreme Court precedents do not definitively state when the Court should evaluate attachment. But three cases are informative: *United States v. Williamson*,[18] *Groh v. Ramirez*,[19] and *United States v. Nolan*.[20]

In *Williamson*, an Internal Revenue Service officer applied for and received a search warrant to enter the defendant's business.[21] When challenged on particularity, a Tenth Circuit panel held that the search warrant failed the particularity requirement as issued because it "provide[d] no meaningful description of the premises" to be searched.[22] The panel also rejected the argument that the executing officer's knowledge of the premises cured the warrant's defects at the time it was issued.[23] In a footnote, the panel briefly addressed whether the warrant's application and affidavit could cure the defective warrant, stating that they could not because there was "no evidence in the record that either the affidavit or the warrant application were attached to the search warrant *at the time of execution*."[24]

The Supreme Court also rejected an argument that a supporting affidavit could cure a deficient warrant a decade after *Williamson*.[25] In *Groh*, a Bureau of Alcohol, Tobacco and Firearms agent applied for and received a warrant to search a ranch.[26] The accompanying affidavit presented

---

[18] 1 F.3d 1134 (10th Cir. 1993).

[19] 540 U.S. 551 (2004).

[20] 854 F. App'x 977 (10th Cir. 2021) (unpublished).

[21] *Williamson*, 1 F.3d at 1135.

[22] *Id.* at 1136.

[23] *Id.*

[24] *Id.* at 1136 n.1 (emphasis added).

[25] *Groh*, 540 U.S. at 557.

[26] *Id.* at 554.

to the magistrate described the agent's basis for believing illegal weapons, explosives, and records were at the ranch, but the search warrant itself did not identify any of the items to be seized.[27] When executing the warrant, the agent left a copy of the search warrant with the ranch's occupants, but not a copy of the affidavit, which had since been sealed.[28]

Finding the warrant "plainly invalid" when issued for lack of particularity, the Supreme Court next addressed whether the affidavit could cure it, recognizing that several circuits permit such a result when "the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."[29] But the *Groh* "warrant did not incorporate other documents by reference, nor did either the affidavit or the application . . . accompany the warrant."[30] *Groh* ultimately explains:

> unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance *that the Magistrate* actually found probable cause to search for, and to seize, every item mentioned in the affidavit.[31]

In 2021, a Tenth Circuit panel considered *Williamson* and *Groh* in an unpublished decision to address similar attachment arguments as the ones presented in this case.[32] In *Nolan*, a detective submitted a warrant packet to a magistrate judge containing a supporting affidavit and a separate

---

[27] *Id.*

[28] *Id.* at 555.

[29] *Id.* at 557–58 (collecting cases).

[30] *Id.* at 558.

[31] *Id.* at 560 (emphasis added).

[32] *Nolan*, 854 F. App'x at 979–81.

document listing the items to be seized.[33] After the judge issued the warrant, the detective executed it, but left the supporting documents in his patrol car when doing so.[34]

In challenging the warrant for lack of particularity, the defendant "conceded that the warrant was sufficiently particular . . . when it was issued" because the supporting documents were attached in the warrant packet submitted to the judge.[35] Instead, the defendant made a technical argument that because the supporting documents were "not physically attached to the warrant when it was executed, the warrant no longer met the particularity requirement."[36] The defendant relied on *Groh* and *Williamson*, arguing they stand for the proposition that "an unspecified warrant and the documents providing the necessary particularity must be attached *at the time of execution*" to satisfy particularity.[37]

The *Nolan* panel rejected the defendant's attachment argument, stating that the Fourth Amendment requires courts to focus on the warrant "as issued."[38] First, the panel concluded that "nothing in *Groh* suggests that a warrant that is *sufficiently particular when issued* is no longer valid when executed if the exhibit describing the items to be seized is no longer physically attached to the warrant."[39] Second, the panel concluded that "*Williamson* does not stand for the proposition that a warrant that is *valid when issued* based on an attached exhibit providing the necessary particularity is no longer valid when executed if the exhibit and warrant do not remain physically

---

[33] *Id.* at 978.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 978–79.

[37] *Id.* at 980 (emphasis added).

[38] *Id.* at 979.

[39] *Id.* at 980 (emphasis added).

attached."[40] The panel further cited a previous Tenth Circuit decision—albeit unpublished—holding that "courts may consider incorporated documents that were physically attached to the warrant when it was issued but not when it was executed" when the same officer obtained and executed the warrant and the defendant does not contend that officers exceeded the scope of the affidavit.[41] Accordingly, the panel concluded that the attachment requirement was satisfied when the warrant was issued.

Whether *Nolan*'s interpretation is the rule in the Tenth Circuit is yet to be confirmed in any published decision.[42] But *Nolan*'s emphasis on evaluating particularity—including the attachment requirement—at a warrant's issuance is persuasive. The Fourth Amendment states that "no Warrants *shall issue*" without "particularly describing the place to be searched, and the persons or things to be seized."[43] *Williamson* and *Groh* both determined the particularity of their respective warrants at issuance, not execution.[44] Further, neither case explains how a warrant that is particular when issued via incorporation could become unparticular simply because the supporting affidavit is no longer physically attached when executed.[45]

---

[40] *Id.* at 981 (emphasis added).

[41] *Id.* (citing *United States v. Perez*, 145 F.3d 1347, 1998 WL 188320 (Table), at *4 n.2 (10th Cir. 1998) (unpublished)). *Nolan* also states, "*Perez* did not suggest, nor do we, that these are the only circumstances in which a court may consider incorporated documents that were physically attached to the warrant when it was issued but not when it was executed." *Id.* at 981 n.3.

[42] The only published decision that cites *Nolan*'s interpretation as possibly binding in the Tenth Circuit comes from the District of Kansas. *United States v. Anderson*, 658 F. Supp. 3d 1000, 1016 (D. Kan. 2023). But the court specified *Nolan*'s unpublished status and did not actually reach the issue on whether the applications were effectively incorporated into the search warrants at issue. *Id.* at 1016, 1018 n.7 ("The court reaches its conclusion based solely on the language of the Millwood search warrants and need not determine whether the officer's applications were effectively incorporated into those warrants.").

[43] U.S. Const. amend. IV (emphasis added).

[44] *Williamson*, 1 F.3d at 1136; *Groh*, 540 U.S. at 558.

[45] *Nolan*, 854 F. App'x at 980–81 (discussing *Williamson* and *Groh*).

Because no clear explanation exists, Defendant asks the Court to read between the lines of *Williamson* and *Groh* to find in its favor. Defendant first relies on the *Williamson* footnote dismissing an incorporation argument because there was "no evidence in the record" that the affidavit was attached "at the time of execution."[46] But there was also no evidence in the record that the warrant met the "*Leary* 'one document' rule when the warrant application was submitted to the issuing judge."[47] The *Williamson* panel further refused to consider particularity at the execution stage, rejecting the argument that the executing officer's knowledge of the place to be searched alone could cure the defective warrant as-issued.[48] As such, *Williamson*'s footnote cannot be read as requiring the Court to evaluate attachment at a warrant's execution as opposed to issuance.[49]

The same is true for *Groh*. Defendant quoted the following language from *Groh* as decisive at the suppression hearing:

> The Fourth Amendment by its terms requires particularity in the warrant, not the supporting documents. And for good reason: "The presence of a search warrant serves a high function," and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, *but the contents of that document are neither known to the person whose home is being searched nor available for her inspection.*
>
> . . .
>
> [I]n this case the warrant did not incorporate other documents by reference, *nor did either the affidavit or the application* (which had been placed under seal) *accompany the warrant.*[50]

---

[46] *Williamson*, 1 F.3d at 1136 n.1.

[47] *See id.* at 1135–36; *Nolan*, 854 F. App'x at 981.

[48] *Williamson*, 1 F.3d at 1136 ("such a rule would be fundamentally inconsistent with the requirement of a *written warrant*" (emphasis in original)).

[49] *Nolan*, 854 F. App'x at 981.

[50] *Groh*, 540 U.S. at 557–58 (emphasis added).

This language, however, does not support a reading that a sufficiently particular warrant when issued becomes unparticular when the affidavit is no longer attached at its execution. To state that supporting documents must be "available for . . . inspection" at a warrant's execution for particularity purposes seemingly contradicts what the Supreme Court has stated the Fourth Amendment does not require.[51] *Groh* itself recognized that the Fourth Amendment does not require "the executing officer to serve the warrant on the owner before commencing the search,"[52] let alone supporting documents.

Additionally, *Groh*'s focus was not on the warrant's particularity at execution; its focus was on the warrant's particularity at issuance.[53] The Court evaluated what the "Magistrate" could have theoretically found, believed, and agreed to when issuing the "obviously deficient" warrant.[54] Like *Williamson*, the *Groh* Court did not evaluate particularity at the execution stage, rejecting the argument that the agent's verbal explanation to other officers about the items to be seized at execution cured the defective warrant as-issued.[55]

---

[51] The Sixth Circuit considered "[w]hat, then, should a lower court make of *Groh*'s reference to an incorporated affidavit being 'present' at the search?" *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 443–44 (6th Cir. 2006). The first possibility is that "the Court's reference to the absence of incorporation *and* to the absence of an accompanying affidavit was necessary to resolve the facial-invalidity problem at hand." *Id.* (emphasis in original). The second possibility is that the failure to bring the affidavit to the search "may be a *factor* in determining whether the search was reasonable." *Id.* at 444 (emphasis in original). But "[t]he salient point is that *Groh* did not establish a one-size-fits-all requirement that affidavits must accompany all searches to prevent a lawfully authorized search from becoming a warrantless one." *Id.*

[52] *Groh*, 540 U.S. at 562 n.5, *cited by United States v. Grubbs*, 547 U.S. 90, 98 (2006). "The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante*, the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police.'" *Grubbs*, 547 U.S. at 99 (quoting *Wong Sun*, 371 U.S. at 481–82).

[53] *See Groh*, 540 U.S. at 560, 562; *see also Baranski*, 452 F.3d at 443 ("*Groh* turns on the facial invalidity of the warrant, not the manner in which the officers conducted the search.").

[54] *See Groh*, 540 U.S. at 560.

[55] *Id.* at 562.

If *Williamson* and *Groh* counsel anything regarding when the Court should evaluate attachment, it is that the Court should focus on particularity at issuance. *Nolan*'s interpretation of the cases confirms as much,[56] and there is no contrary interpretation on the matter. Accordingly, the Court next considers whether the affidavits were attached to the state search warrants when issued.

Here, each state search warrant and their accompanying affidavits were sent in the same email to Judge Elliot for approval. Defendant argues that the attachment requirement remains unsatisfied for the Residential Search Warrant because the documents, although once a single document, were severed, scanned, and sent as two separate attachments. This is a distinction without a difference. The prophylactic purpose of the incorporation requirements is to ensure the search warrant and accompanying affidavit can reasonably be construed together.[57] Judge Elliot could construe the Residential Search Warrant and accompanying affidavit together because they were present in the same email. The Court does not believe "that the Constitution requires us to draw the line between lawful and unlawful searches according to the presence or absence of a staple, a paper clip, a bit of tape, or a rubber band,"[58] nor according to the presence or absence of

---

[56] *See Nolan*, 854 F. App'x at 980–81. At the motion hearing, Defendant argued that the officers exceeded the scope of the Residential Search Warrant by taking photos in the detached garage when it only authorized them to take "[p]ictures of the exterior and interior of the residence." While *Nolan* based its interpretation in part on the fact that the defendant did not allege the warrant's scope was exceeded, *Nolan* indicated that this was not "the only circumstance[] in which a court may consider incorporated documents that were physically attached to the warrant when it was issued." *Id.* at 981 n.3. The Court does not see how Defendant's allegation should change its analysis on the attachment issue, especially when the officers did not seize any items from the detached garage and the Government has not indicated it will use any of the photos at trial.

[57] *See Leary*, 846 F.2d at 603 (noting that an affidavit can only cure a deficient search warrant when they "can be reasonably said to constitute one document" before describing the incorporation requirements "to reach this result").

[58] *United States v. Towne*, 997 F.2d 537, 548 (9th Cir. 1993).

PDF merger and file compression technology. Accordingly, the Court concludes that the Government has met its burden to demonstrate the attachment requirement is met.

### 2. Express Incorporation

The Government must next show that the state search warrants expressly incorporated their affidavits. "A warrant does not incorporate an affidavit merely by mentioning the affidavit . . . [it] must expressly refer to the affidavit and incorporate it by reference using suitable words of reference."[59] Courts apply "common sense as well as logic" when determining if express incorporation is met, and generally "construe search warrants in a practical and commonsense fashion, avoiding a hypertechnical reading of the terms."[60]

Here, each state search warrant contains the following language:

> The items listed in the Application for Search Warrant and the affidavit of probable cause are incorporated herein by reference and are located in or upon the above-described persons, places, things or means of conveyance.

The parties do not dispute that the warrants use clear incorporation language (i.e. "incorporated herein by reference") but dispute what exactly the language incorporates. The Government reads the language broadly, arguing it incorporates both the items listed in the search warrant and the entire affidavit. Defendant reads the language narrowly, arguing it only incorporates *the items* listed in the warrant and affidavit, not the entirety of the affidavit.

While the sentence certainly could have been written more clearly (and should be in the future), the Government's reading is the more practical, less hypertechnical one. The warrant expressly refers to the affidavit and uses suitable words of reference in doing so. As such, the Court reads the warrant's language as incorporating the entirety of the affidavit. At least one other court

---

[59] *Suggs*, 998 F.3d at 1135.

[60] *Id.* at 1134–36.

would seemingly read the language in the same way.[61] Further, as a matter of common sense, the Court fails to see why the drafter would solely intend for the items listed in the affidavit to be incorporated considering that the same list of items appears in both documents. Accordingly, the Court concludes that the Government has met its burden to demonstrate the express incorporation requirement is met.

The Government has met its burden to show that both incorporation requirements are met. Because the state search warrants properly incorporated the affidavit, the Court concludes that the affidavits cure the various defects and need not address the various warrant exceptions the Government raised.

## B.    Rule 41 of the Federal Rules of Criminal Procedure

Defendant next argues for suppression because the state search warrants violated Rule 41 of the Federal Rules of Criminal Procedure. Rule 41(b) outlines various requirements for obtaining warrants that are "federal in character."[62] Specifically, Rule 41(b)(1) states "[a]t the request of a federal law enforcement officer or an attorney for the government: (1) a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district[.]"

---

[61] *See Herbel v. City of Marion*, 2024 WL 4416849, at *21 n.25 (D. Kan. 2024) ("The Court notes Plaintiffs' argument that the application cannot lend particularity unless it is expressly incorporated and attached. The warrant does state that the 'items listed in the Application for Search Warrant and the affidavit of probable cause are incorporated herein by reference.' But the record is silent as to whether the application was actually attached to the warrant." (citations to be record omitted)).

[62] *See* Fed. R. Crim. P. 41(b); *United States v. Pennington*, 635 F.2d 1387, 1389 (10th Cir. 1980).

In a challenge under Rule 41, the Court conducts its analysis pursuant to the framework in *United States v. Pennington*.[63] Under *Pennington*, the Court first determines whether Rule 41 was in fact violated.[64] Upon such a finding, the Court next proceeds by "determining whether that specific Rule 41 violation rises to the level of a Fourth Amendment violation."[65] If there is no Fourth Amendment violation, the Court then determines whether "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule."[66]

Here, the parties first dispute whether the state search warrants were federal in character, implicating Rule 41. Generally, a search is federal in character "when federal officers are directly involved in carrying out the search itself and in taking immediate custody of the fruits of the search" or when "from the beginning it was assumed a federal prosecution would result."[67] But a state search with minimal federal involvement does not require a federal search warrant.[68]

The federal involvement when obtaining and executing the Residential Search Warrant and Device Search Warrants is minimal at best. The lead investigator, Detective O'Neal, possesses TFO credentials, but she is primarily employed by SCSO as a state law enforcement officer, she reports to a WPD officer, and she identified herself as with the sheriff's office when executing the

---

[63] *United States v. Krueger*, 809 F.3d 1109, 1114 (10th Cir. 2015) (citing *Pennington*, 635 F.2d at 1390).

[64] *Id.*

[65] *Id.*

[66] *Id.* (quoting *Pennington*, 635 F.2d at 1390).

[67] *United States v. Pulliam*, 748 F.3d 967, 974 (10th Cir. 2014).

[68] *United States v. Nelson*, 2020 WL 6343301, at *11 (D. Kan. 2020) (citing *United States v. Barret*, 496 F.3d 1079, 1090–91 (10th Cir. 2007); *United States v. Millar*, 543 F.2d 1280, 1283 (10th Cir. 1976)).

Residential Search Warrant. While HSI Agent Putrah assisted with the investigation and execution of the Residential Search Warrant, multiple witnesses testified that all ICAC officers—local, state, and federal—routinely work together and that Agent Putrah's presence in no way automatically converted the state investigation into a federal one.

The fact that this case quickly converted from a state investigation to a federal case two days after executing the Residential Search Warrant is not unusual in child exploitation cases, considering that the various criminal statutes overlap significantly.[69] It is also not unusual considering how ICAC operates by permitting local, state, and federal officers to work together and share experience investigating internet crimes against children. Regardless, whether a search is federal in character depends on what was envisioned "from the beginning" of the investigation at issue.[70]

From the beginning of this investigation, a state officer applied for state search warrants by sending them to a state prosecutor for approval which were ultimately issued by a state judge and primarily executed by the same state officer who assumed that a state prosecution would result. Because the state search warrants were not "federal in character," Rule 41 does not apply to this case. Accordingly, the Court need not conduct the remainder of the Rule 41 analysis.

## C.    Authority to Consent

The remaining dispute between the parties concerns Agent Putrah's search of the detached garage and the cellphone he found therein on December 19, 2024. Agent Putrah did not obtain a search warrant for these searches, but he did obtain verbal and written consent from Mrs.

---

[69] *Compare* K.S.A. 21-5510(a)(1)–(2), *with* 18 U.S.C. §§ 2251(a); 2252A(a)(5)(B).

[70] *Pulliam*, 748 F.3d at 974 (quoting *Barrett*, 496 F.3d at 1091).

Langhover to do so. Defendant argues that Mrs. Langhover lacked the requisite authority to consent.

Law enforcement may obtain consent to search or seize property as an exception to the warrant requirement.[71] A third party may consent to the search of another's property if they possess either actual or apparent authority to do so.[72] The Government bears the burden to prove that the consenting party had either type of authority.[73]

At minimum, Mrs. Langhover had apparent authority to consent to the search of the detached garage. A third party has apparent authority to consent "if the facts available to the officer at the moment . . . warrant a man of reasonable caution [to believe] that the consenting authority" has either mutual use or control.[74] Agent Putrah knew that Mrs. Langhover was married to the Defendant, lived with him on the marital property, and had joint access and control over the residence. When Agent Putrah asked her about the detached garage, she did describe it as "his business," but she also informed him what was contained inside including poison dart frogs, isopods, springtails, and more. Under these facts, it was reasonable for Agent Putrah to believe that Mrs. Langhover had mutual use and control over the detached garage and its contents. Accordingly, Mrs. Langhover had apparent authority to consent to the search of the detached garage and the search of the phone found therein.

---

[71] *United States v. Cos*, 498 F.3d 1115, 1124 (10th Cir. 2007) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

[72] *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004) (citing *United States v. Gutierrez–Hermosillo*, 142 F.3d 1225, 1230 (10th Cir. 1998)).

[73] *Cos*, 498 F.3d at 1115 (citations omitted).

[74] *Id.* at 1128 (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)).

Notably, law enforcement did not recover any child exploitation images from the phone Agent Putrah seized. Defendant seeks to suppress the phone based on the metadata recovered from it. Whether this has any evidentiary value at trial is a question for the Court to resolve another day.

### IV.    Conclusion

Despite the state search warrants' defects, they manage to be particular under the Fourth Amendment by sufficiently incorporating their accompanying affidavits such that suppression is inappropriate. Suppression is also inappropriate under Rule 41 because the state search warrants were not federal in character, rendering Rule 41 inapplicable. Finally, Mrs. Langhover had apparent authority to consent to the second search of the detached garage and the subsequent search of the phone found therein such that suppression of the phone is inappropriate at this time. For these reasons, the Court denies Defendant's Motion to Suppress.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Doc. 22) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 22nd day of September, 2025.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-21-